IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                                       :
PAUL BRODEUR                                           :       3:17 CV 1738 (RMS)
                                                       :
v.                                                     :
                                                       :
LT. ANGEL CHAMPION ET AL.                              :       DATE: AUGUST 16, 2019
                                                       :
-------------------------------------------------------x
```

RULING ON PLAINTIFF'S REQUEST TO USE VISUAL AIDS (DOC. NO. 63)

The plaintiff, Paul Brodeur, filed this motion requesting to use a mannequin as a visual aid "to assist the jury in understanding the testimony and other evidence in this case." (Doc. No. 63 at 1). The defendants oppose this request on the following grounds: (1) the use of the mannequin is misleading and lacks a foundation; (2) the use of the mannequin is cumulative of other more representative evidence that will be offered at trial, including videos of the incident, and testimony from fourteen witnesses, including the plaintiff; (3) the timing of the plaintiff's notice of use of a mannequin is prejudicial; and, (4) the mannequin should be excluded as any probative value of the mannequin is substantially outweighed by the potential for undue prejudice. (Doc. No. 67 at 1-8). The Court agrees with the defendants.

The decision to allow a demonstrative exhibit falls within the discretion of the trial court, and such exhibit may be used to illustrate and clarify other evidence, or as a visual aid to the jury in comprehending the verbal testimony of a witness. 2 HANDBOOK OF FED. EVID. § 401:2 (8th ed.). Demonstrative exhibits, and mannequins specifically, are often used as visual aids to help illustrate expert witness testimony. *See, e.g.*, *Jordan v. City Chicago*, No. 08 C 6902, 2012 WL 254243, at *10 (N.D. Ill. Jan. 27, 2012) (holding that the expert offering trajectory opinions "is

free to use the mannequin and the photographs of the mannequin in the report at trial for demonstrative purposes."); *State v. Tollardo*, 77 P.3d 1023, 1027 (N.M. 2003) (holding that expert witness in crime scene reconstruction and computer assisted design programs could use computer-generated simulation as a demonstrative exhibit after concluding that the computer-generated simulation was valid); *Moss v. State*, 559 S.E.2d 433, 434–35 (Ga. 2002) (permitting the use of "a mannequin head to help the jury understand the testimony of the medical examiner"); *People v. Cummings*, 850 P.2d 1, 38 (Cal. 1993), *as modified on denial of reh'g* (June 23, 1993), *abrogated on other grounds by People v. Merritt*, 392 P.3d 421 (Cal. 2017) (holding that the probative value of the use of a mannequin to illustrate the paths of six bullets, as explained by the prosecution's expert, and the use of photographs of an "accurate reconstruction" of an event, outweighed any prejudice to the defendant, particularly given that the expert testimony was "confusing at times."); *State v. Paulsen*, 265 N.W.2d 581, 589 (Iowa 1978) (holding that the trial court did not err in permitting "[the expert witness, a doctor,] to use the medical mannequin to demonstrate the injury to [the victim] and to amplify his testimony."). In such cases when demonstrative exhibits are used, however, the exhibit must constitute "an accurate and reasonable reproduction of the object involved[.]" *State v. Duncan*, 894 So. 2d 817, 829 (Fla. 2004) (citation and internal quotations omitted); *see Tollardo*, 77 P.3d at 1027. Moreover, when demonstrative models are proposed, "courts must . . . carefully examine such materials to insure their reliability and probative value." *Estate of Jaquez v. Flores*, No. 10 Civ. 2881(KBF), 2016 WL 1060841, at *10 (S.D.N.Y. Mar. 17, 2016).

The mannequin in this case is not offered to explain expert testimony. In fact, this case does not include expert testimony, and, in light of the fact that the plaintiff did not disclose his

intent to use this mannequin until the final pretrial conference, on August 5, 2019, no expert may address the foundation or accuracy of the mannequin. Rather, there are fourteen witnesses, including the plaintiff, who will testify about the event at issue. The use of the demonstrative evidence, therefore, will be cumulative.

Additionally, the accuracy of this visual aid is in question. After inspecting the mannequin, defense counsel conveys to the Court that "it is not the size of Mr. Brodeur and weighs a fraction of Mr. Brodeur's weight. Furthermore, the legs and arms do not appear to bend or move in the full manner in which the human body can move or bend." (Doc. No. 67 at 2). Given the potential issues identified by the defendants as to the size and maneuverability of the mannequin, the Court must weigh whether the probative value substantially outweighs the prejudice to the defendants. *Estate of Jaquez*, 2016 WL 1060841, at *10. Under Rule 403, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. There are videos of the incident that will be shown at the trial, and to the extent that they are difficult to see from various angles, there are more than a dozen witnesses who will offer testimony explaining the sequence of events.

The risk of prejudice is magnified in a case such as this in which the legal standard for an excessive force case brought under the Eighth Amendment requires a determination of "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (citation & internal quotations omitted). A reenactment in the courtroom of the events at issue presents a risk of confusion for the jury and, as the defendants argue appropriately, "invites the

jurors to base their determination on 20/20 hindsight[, . . .] under conditions that are not representative of those that faced the defendants at the time of the incident." (Doc. No. 67 at 4); *see Twitty v. Ashcroft*, No. 3:04 CV 410 (DFM), 2011 WL 59303, at \*8 (D. Conn. Jan. 6, 2011) (instructing the jury that, in determining whether the defendants' actions constituted excessive force, the jurors "must not base [their] decision upon the 20/20 vision of hindsight. [The jurors] must put [themselves] in the place of the Defendant during the very moment when the events were occurring and judge his actions as of that time and under those circumstances."), *aff'd sub. nom. Twitty v. Salius*, 455 F. App'x.97 (2d Cir. 2012).

Accordingly, the Court concludes that the use of this mannequin is cumulative and will serve to confuse the jury, and that the probative value is substantially outweighed by the potential of unfair prejudice to the defendants. *Estate of Jaquez*, 2016 WL 1060841, at \*10 (holding that "[w]here a demonstrative aid threatens to mislead, rather than assist, the jury, it is appropriate for the Court to exclude it."). The plaintiff's Request to Use Visual Aids (Doc No. 63) is *denied*.[1]

Dated this 16th day of August, 2019, at New Haven, Connecticut.

/s/ *Robert M. Spector*, U.S.M.J
Robert M. Spector
United States Magistrate Judge

---

[1] In addition to the foregoing, the plaintiff states that he "will seek to use still images from Plaintiff's Exhibit 1. Some of these images involve zooming in on the video—while maintaining pixel integrity—in order to make it easier for the jury to see." (Doc. No. 63 at 3). The defendants do not object in their brief in opposition. Accordingly, the plaintiff may zoom in on these images contained in Exhibit 1.